2024 IL App (1st) 241013

No. 1-24-1013B

Opinion filed September 11, 2024

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 24 CR 04602-01 |
| | ) | |
| JACQUEZ WILLIAMS, | ) | Honorable |
| | ) | Mary Cay Marubio, |
| Defendant-Appellant. | ) | Charles Beach II, |
| | ) | Judges, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Lampkin specially concurred.
Justice Van Tine specially concurred.

**OPINION**

¶ 1   Defendant Jacquez Williams filed a pretrial detention[1] appeal under Illinois Supreme Court

Rule 604(h) (eff. Apr. 15, 2024) from the circuit court's order entered on May 3, 2024, which

denied his pretrial release. On appeal, defendant contends that (1) the State failed to prove by clear

and convincing evidence that he committed the charged offense, (2) the State failed to prove that

he posed a real and present threat to the safety of any person or the community, and (3) the trial

_____

[1]Public Act 101-652 (eff. Jan. 1, 2023), which amended article 110 of the Code of Criminal
Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), is commonly known as the Pretrial
Fairness Act or the SAFE-T Act. Neither name, however, is the official title of the legislation. See *Rowe
v. Raoul*, 2023 IL 129248, ¶ 4.

court erred in finding that no conditions could mitigate his danger to the community when it considered only the factual basis of the State's charge. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    Defendant was arrested on April 11, 2024. He was charged with criminal sexual assault by force under section 11-1.20 of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/11-1.20 (West 2022)) and criminal sexual abuse under section 11-1.50 of the Criminal Code (*id.* § 11-1.50), in connection with an interaction that occurred between him and complainant K.W. on May 5, 2023, at 789 East 31st Drive in Chicago.

¶ 4    A pretrial detention hearing occurred on April 13, 2024. The State's proffer showed that on May 5, 2023, at around 8 p.m., defendant and two other men accompanying him approached a group of four women, one of whom was K.W. The two groups engaged in conversation, with defendant and K.W. speaking to one another. Defendant was informed by K.W.'s friend that she was 17 and that she was intoxicated. At some point, he put his number in her phone. Defendant then offered K.W. a ride home, and they both proceeded to his vehicle. When K.W. tried to sit in the front passenger seat, defendant pushed her into the back seat and closed the door. He attempted to remove her shorts, and K.W. physically resisted. Defendant eventually removed K.W.'s shorts and underwear and then inserted his penis into her vagina without her consent. During this encounter, defendant became agitated by the repeated ringing of K.W.'s cell phone. Following the encounter, he instructed K.W. to get out of his car, after which they returned to the larger group.

¶ 5    Upon their return, K.W. immediately made an outcry to one of her friends. She then went to that friend's relative's house, after which she stayed with her boyfriend for the night. On May 7, 2023, K.W. went to the hospital, where she had a criminal sexual assault kit conducted. She filed a police report that same day. The criminal sexual assault kit ultimately revealed three DNA

profiles: K.W.'s DNA, a major male DNA, and a minor male DNA. The DNA has not been identified as belonging to defendant or any other specific individual.

¶ 6 On June 15, 2023, defendant was identified through a photo array as the offender, both by K.W. and the friend to whom she had outcried on the night of the assault. Their identifications were based on observations from the night of the incident, as well as FaceTime calls that defendant made or attempted to make to K.W., which her friend observed.

¶ 7 The State argued that no conditions could mitigate the risk defendant posed because "[t]his was a stranger attack." Although admitting that defendant had no criminal history, the State argued that in this case, he "was on the prowl, looking for a victim, and he saw the victim as nothing more than an opportunity." The State further noted that electronic monitoring does not have "real time" capability to control defendant's "whereabouts" and that he still has 16 hours of movement while on monitoring.

¶ 8 Defendant disputed the characterization of the encounter between him and K.W. Defendant argued that he was not present at 31st Street beach in May 2023. However, he acknowledged being at the beach in June, and he described the encounter occurring at the time as consensual. Defendant did not commit the assault in May 2023 because he did not meet K.W. until June, when she identified him. When defendant and K.W. returned to the group after the encounter, they stayed with the group at the beach for three hours. According to defendant, K.W. contacted the mother of his children and told her that she had sex with defendant.

¶ 9 Defense counsel emphasized defendant's lack of criminal history and violent background. Defendant was also a high school graduate and worked at McCormick Place for 10 years. He has five children.

¶ 10 The trial court found K.W.'s statements credible where she made an immediate outcry to her friend after the incident and then had a sexual assault kit conducted two days later. The court also

found that defendant posed a threat in that he engaged with K.W., who he was told was 17 years old, and he entered his phone number into her cell phone. The court found that defendant went to the beach, "met a young lady *** [and] attempted to prey on that person." Because electronic monitoring, GPS, or setting a curfew would not prohibit defendant from contact with minors or K.W., the court determined that no conditions of pretrial release could mitigate the threat he posed.

¶ 11 Defense counsel requested that defendant be allowed to present witnesses at the next court hearing. The trial court stated that defendant "has the right to review every court date" and that it was defense counsel's "prerogative" to present witnesses if she wished to do so. The court informed defendant that he had a right to appeal the detention ruling within 14 days but noted that the "law changes on April 15th."

¶ 12 On April 26, 2024, defendant filed a motion for relief under amended Illinois Supreme Court Rule 604(h)(2) (eff. April 15, 2024). Therein, he alleged that the State failed to present sufficient evidence showing that he in fact committed the offense. Defendant also alleged that the State failed to meet its burden that he was a real and present danger to any person or the community and that no conditions of release could mitigate the danger.

¶ 13 The hearing for this motion took place on May 3, 2024. Defendant brought two witnesses to the hearing, Shaquille Bryant and Shaquan Martin, whom he intended to call. They also provided affidavits, which were included in defendant's motion for relief.[2] The trial court questioned whether affidavits should be considered at the hearing, acknowledging that the rule "doesn't really give us a lot of direction on how these Motions for Relief are heard." The court allowed defendant to call his witnesses. After the State repeated its proffer from the April 13, 2024, hearing, the witnesses testified.

---

[2]The record on appeal does not contain these affidavits.

¶ 14 Bryant testified that he was defendant's cousin and he was 31 years old. On May 5, 2023, around 7 p.m., he was with defendant and Martin at 31st Street beach. They talked to a group of four women at the beach. No one stated that they were under 18 years of age. Defendant left with one of the women toward defendant's vehicle. Bryant and Martin "paired off" with the other women. When defendant returned with the woman, they were "calm," and they walked to a grassy area near the beach and "huddled up." Bryant and defendant left the beach around 11 p.m.

¶ 15 Martin testified that defendant was a "cousin of the family," although Martin was not related to defendant. Martin was 28 years old. He, Bryant, and defendant went to 31st Street beach on May 5, 2023, where they talked to a group of women who were "partying [and] listening to music." He did not know any of them were under 18 years old. Defendant and K.W. left at some point and then returned. They were "getting along well." He and Bryant "paired off" with the other women.

¶ 16 Defense counsel argued that the encounter between defendant and K.W. in defendant's car was consensual, pointing to the witnesses' testimony that, upon her return from defendant's vehicle, K.W. expressed no immediate outcry and the group continued "partying" for at least 5 to 15 more minutes. Additionally, there was no evidence that K.W. suffered physical injury associated with force, such as tears or abrasions. As for the dangerousness element, counsel again raised defendant's substantial work history, five children, and absence of criminal background. Counsel argued that defendant's threat could be mitigated with the use of electronic monitoring.

¶ 17 The State argued that Bryant's and Martin's testimony corroborated K.W.'s account of the incident and did not contradict her claim that defendant forcefully assaulted her in his vehicle. Furthermore, K.W.'s lack of physical injury did not indicate that an assault never occurred. As for defendant's dangerousness, the State argued that defendant seized an opportunity with a "vulnerable" 17 year old. His "actions on that day make him a danger." No conditions could mitigate this danger because electronic monitoring allows for two days of unrestricted movement.

¶ 18 At the conclusion of the hearing, the trial court denied defendant's motion for relief. It found that the State had shown, by clear and convincing evidence, that defendant "used force in penetrating the victim." The court further stated that "taking into consideration the use of violence and force, the isolation, the opportunistic nature, the[se] are very cunning and opportunistic decisions [by defendant]." The trial court thus found that the State proved that defendant posed "a real and present threat to the safety of members of the community, specifically, vulnerable females."

¶ 19 As to whether the State presented sufficient evidence that no conditions exist that could mitigate defendant's danger to the community, the trial court acknowledged that "we have no background" and that it has been "approximately a year" between the occurrence and defendant's arrest. As for the mitigation of risk, the court stated to defendant, "I don't have the ability to confine you to your home 24/7, in a way that the Cook County Department of Corrections could." The court continued:

"And if my intention is to keep you away from the community, to keep you away from the opportunities that you were afforded in this instance—because it is a pretty quick decision to stop and talk to these teenagers, so for me to protect members of the community, would mean that I couldn't allow you to be in the community, but there are no conditions that allow me to do that. So there are no conditions that I could order that would mitigate the danger that you pose."

¶ 20 Defendant filed his notice of appeal that same day, indicating that he sought to appeal the May 3, 2024, order.

¶ 21                                    II. ANALYSIS

¶ 22 Section 110-6.1(e) of the Code provides that "[a]ll defendants shall be presumed eligible for pretrial release." 725 ILCS 5/110-6.1(e) (West 2022). In order to detain a defendant, the State must

show, by clear and convincing evidence, that (1) the proof is evident or the presumption great that the defendant has committed a detainable offense, (2) the defendant poses a real and present threat to the safety of any person or the community based on the specific facts of the case, and (3) no conditions or combination of conditions exist that can mitigate this threat or defendant's willful flight. *Id.* After the April 13, 2024, detention hearing, the trial court found that the State had met its burden.

¶ 23 Two days later, on April 15, 2024, amended Rule 604(h)(2) went into effect. This rule addresses appeals from orders imposing conditions of pretrial release, granting or denying pretrial release, or revoking or refusing to revoke pretrial release. Rule 604(h)(2) provides:

"As a prerequisite to appeal, the party taking the appeal shall first present to the trial court a written motion requesting the same relief to be sought on appeal and the grounds for such relief. The trial court shall promptly hear and decide the motion for relief. Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024).

¶ 24 Accordingly, on April 26, 2024, defendant filed a motion for relief under Rule 604(h)(2). Therein, he alleged that the State failed to present sufficient evidence showing that he in fact committed the offense. Defendant also alleged that the State failed to meet its burden that he was a real and present danger to any person or the community and that no conditions of release could mitigate the danger. On May 3, 2024, the trial court conducted a full hearing on the motion where defendant presented testimony from two witnesses. After the hearing, the trial court affirmed its determination that the State met its burden on the elements of pretrial detention and that no conditions of release could mitigate defendant's dangerousness.

¶ 25 First, we consider the State's argument that the May 3, 2024, hearing was an improper full detention hearing rather than a hearing on the motion. It contends that a full detention hearing was unnecessary and that the hearing should have instead proceeded as a motion for reconsideration. Citing *People v. Wynne*, 2024 IL App (1st) 240516-U, the State argues that the initial hearing encompassed the findings necessary for a continued hearing and that a second full hearing under these circumstances is a nullity. The State therefore contends that evidence and arguments made at the May 3, 2024, hearing are not relevant to this appeal.

¶ 26 In *Wynne*, the second full hearing was held on the defendant's petition for release, which he filed on February 20, 2024, after the January 2, 2024, order that denied him pretrial release. Thus, the second hearing was considered a continued detention hearing. These hearings only determine the propriety of the defendant's continued detention at subsequent hearings. See 725 ILCS 5/110-6.1(i-5) (West 2022). The sole issue in a continued detention hearing is whether "continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, *** or to prevent the defendant's willful flight from prosecution." *Id.* The *Wynne* court found that nothing in section 110-6.1 allowed for "repeated, comprehensive detention hearings." *Wynne*, 2024 IL App (1st) 240516-U, ¶ 18. Therefore, it found that the February 2024 proceedings "were a nullity insofar as they replicated an initial detention hearing." *Id.* ¶ 21.

¶ 27 Here, Rule 604(h)(2) provides that, after a defendant files a motion for relief, "[t]he trial court shall promptly hear and decide the motion for relief." Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024). Furthermore, "any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived." *Id.*

¶ 28 When construing a supreme court rule, we ascertain and give effect to the intent of the drafters by giving the language used its plain and ordinary meaning. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 22. Admittedly, the scope of a hearing under Rule 604(h)(2)

is not explicitly set forth. However, like the provision for continued detention hearings at issue in *Wynne*, Rule 604(h)(2) says nothing about conducting a second full pretrial detention hearing upon a motion for relief. The rule states only that the trial court "shall promptly hear and decide the motion for relief," which a defendant is required to file in order to appeal. According to the report of the Pretrial Release Appeals Task Force, the purpose of Rule 604(h)(2) is to frame issues on appeal more efficiently, give trial courts the opportunity to correct errors, and streamline the appeals process. See Ill. S. Ct. Pretrial Release Appeals Task Force, Report and Recommendations 5-6 (2024), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/628434e3-d07f-4ead-b1f6-4470d7e83bf3/Pretrial%20Release%20Appeals%20Task%20Force%20Report_March%202024.pdf [https://perma.cc/GDS4-7UT7]. As such, the scope of a proper Rule 604(h)(2) hearing necessarily follows the relief requested. A second full-scale pretrial detention hearing upon a motion for relief, with new evidence and proffers, would only complicate the appeals process and add confusion regarding the issues before this court on appeal.

¶ 29 Following the plain language of the rule, we find that a proper Rule 604(h)(2) hearing in this case would consist of an examination of the State's evidence at the initial detention hearing and a determination of whether the State had met its burden of proof. Although the hearing for defendant was an improper full detention hearing, the error was harmless because our determination would be the same even if we exclude the content of that second hearing. See *People v. Jackson*, 2020 IL 124112, ¶ 127 (finding that to establish harmless error, "the State must prove beyond a reasonable doubt that the result would have been the same absent the error").

¶ 30 Before deciding the merits of defendant's appeal, we must also consider the appropriate standard of review. Here, a proper Rule 604(h)(2) hearing involves the examination of whether the State satisfied its burden of proof at the initial detention hearing. Therefore, our standard of review in this case remains the same as our review of appeals under the pretrial detention provisions of

the Code prior to the enactment of Rule 604(h)(2). We recognize that a split has emerged among appellate court decisions on the proper standard for reviewing whether the State has met its burden under section 110-6.1(e). See *People v. Pitts*, 2024 IL App (1st) 232336 (detailing the debate among the districts regarding the appropriate standard of review). As *Pitts* recognized, some courts have found that an abuse of discretion applies to the court's factual findings, while others have determined that a manifest weight of the evidence standard applies. *Id.* ¶ 14. Furthermore, courts in two divisions of the First District have found that the first two elements of section 110-6.1(e) should be reviewed using the manifest weight standard but that the third element should be reviewed for an abuse of discretion. See *People v. Reed*, 2023 IL App (1st) 231834; *People v. Saucedo*, 2024 IL App (1st) 232020.

¶ 31    We agree with the reasoning in *Reed* and *Saucedo* as set forth in those cases. Therefore, for elements reviewed under the manifest weight standard, a finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if it is unreasonable, arbitrary, or not based on the evidence presented. *People v. Deleon*, 227 Ill. 2d 322, 332 (2008). For the third element, the trial court abuses its discretion if its finding is arbitrary, fanciful, or unreasonable or if no reasonable person would agree with the court. *People v. Becker*, 239 Ill. 2d 215, 234 (2010).

¶ 32 Defendant first contends that the State failed to meet its burden of proving by clear and convincing evidence that the proof is evident, or the presumption is great, that the defendant used force to sexually assault K.W.

¶ 33 The evidence presented before the trial court established that K.W. and defendant had intercourse in his car, and that two days later K.W. had a sexual assault kit performed. The State asserted that the encounter was not consensual, as evidenced by K.W.'s outcry upon her return to the group and her submission to testing under the sexual assault kit. Although defendant claimed

the encounter was consensual, the trial court's assessment of K.W. as a credible witness was not against the manifest weight of the evidence.

¶ 34 Defendant further argues that the State failed to present any evidence that proved he used force or threat of force during his encounter with K.W. and that any evidence presented of K.W.'s outcry, as well as her decision to have a sexual assault kit performed, was circumstantial and insufficient. He also argues that the DNA recovered from the sexual assault kit was not explicitly tied to him and was inconclusive in nature.

¶ 35 We are mindful that the State's burden here is not proof beyond a reasonable doubt. *People v. Stock*, 2023 IL App (1st) 231753, ¶ 13. Also, defendant's argument that the State's proffer was insufficient to show that he committed the assault, because the evidence was circumstantial, is not well taken. By way of analogy, circumstantial evidence is admissible in criminal cases if it is relevant, more probative than prejudicial, and does not violate other evidentiary rules. See *People v. Levy*, 204 Ill. App. 3d 201, 205 (1990). As such, a circumstantial proffer of what the evidence *will* be can certainly support the trial court's determination here that the proof is evident, or the presumption is great, that defendant committed the offense. The trial court's determination that the State met its burden on this element was not against the manifest weight of the evidence.

¶ 36 Defendant next contends that the State failed to meet its burden of proving that he posed a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. As support, he cites his lack of criminal background and close ties to his family. He also argues that he engaged in no criminal conduct between the time of the incident on May 5, 2023, and his arrest on April 11, 2024.

¶ 37 To assess this element, the legislature provided a list of factors that, while not comprehensive, guide courts in determining whether a defendant poses a real and present threat. 725 ILCS 5/110-6.1(g) (West 2022). Factors considered in this case include the nature and

circumstances of any offense charged, the history and characteristics of the defendant, and the age and physical condition of any victim or complaining witness.

¶ 38 The evidence presented before the trial court showed that defendant had no criminal history, was actively employed, and maintained a relationship with his children. As for the nature and circumstances of the offense charged, the State's proffer detailed defendant's actions in approaching K.W., isolating her, and then forcing himself on her while they were separated from the rest of the group. The trial court relied on these facts, along with K.W.'s young age at the time of the offense, to find that defendant posed a real and present threat to the safety of any person or the community. The trial court's finding was not unreasonable, arbitrary, or not based on evidence presented.

¶ 39 Defendant's final contention is that the trial court erred in denying him pretrial release where the State failed to establish that no condition or combination of conditions could mitigate the risk he posed. We review this element using an abuse of discretion standard. A trial court abuses its discretion if the court's decision is arbitrary, fanciful, or unreasonable or if no reasonable person would agree with the court. *Saucedo*, 2024 IL App (1st) 232020, ¶ 36.

¶ 40 There are multiple factors that trial courts consider when determining whether mitigating conditions of pretrial release are appropriate. These include but are not limited to

"(1) the nature and circumstances of the offense charged;

(2) the weight of the evidence against the defendant, except that the court may consider the admissibility of any evidence sought to be excluded;

(3) the history and characteristics of the defendant, including:

(A) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct,

12

history [*sic*] criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state;

(4) the nature and seriousness of the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release, if applicable, as required under paragraph (7.5) of Section 4 of the Rights of Crime Victims and Witnesses Act;

(5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process that would be posed by the defendant's release, if applicable[.]" 725 ILCS 5/110-5(a) (West 2022).

¶ 41 At the hearing, defendant emphasized his lack of criminal history, as reflected in his public safety assessment (PSA). Defendant's PSA stated he was a 1 out of 6 on both the "New Criminal Activity Scale" and the "Failure to Appear Scale." He additionally emphasized that he had made no attempt to contact K.W. in the extended time between the encounter and his arrest. The State focused on the "nature and randomness" of his offense as the reason no condition or combination of conditions could mitigate the real and present threat defendant posed. It additionally argued that electronic monitoring could be "walked away from, cut off, or removed" and that it allowed for two days of unrestricted movement.

¶ 42 In considering whether any discretionary conditions could be imposed, the trial court emphasized K.W.'s age and characterized defendant's actions as an attempt to "prey" on that

13

young person on a beach. In its written order, the trial court reasoned that, given the nature of the offense, as well as the fact that it involved contact with a teenager in a public place, neither electronic monitoring nor curfew or GPS could mitigate defendant's threat.

¶ 43 Defendant argues that the "bare allegations that [he] has committed a violent offense" are insufficient to establish this element, citing *Stock*, 2023 IL App (1st) 231753, ¶ 18. In *Stock*, the defendant discharged a handgun into his bedroom wall, injuring his wife. *Id.* ¶ 5. On appeal, this court reversed the trial court's finding that no condition or combination of conditions could mitigate any threat the defendant posed. *Id.* ¶¶ 21-23. The court held that the State's sole reliance on its factual proffer about the offense was insufficient, particularly because the defendant had no other criminal history beyond the instant case. *Id.* ¶ 19. The court further found that the trial court's order, which stated only that "[t]he defendant shot a firearm at the complaining witness" and gave no additional reasoning, was insufficient to support a determination that no conditions could mitigate the danger posed by the defendant. *Id.*

¶ 44 Unlike *Stock*, the State in this case provided argument, beyond the bare fact that a sexual assault occurred, to support that no conditions could mitigate defendant's danger to the community or K.W. if he was released. In finding that no conditions could mitigate defendant's threat, the trial court weighed "several factors" in favor of defendant and against, and it explained in detail why no conditions of release could safeguard the victim or the community. Accordingly, we find that the trial court's determination on this element was not an abuse of discretion.

¶ 45                                    III. CONCLUSION

¶ 46 For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 47 Affirmed.

¶ 48 JUSTICE LAMPKIN, specially concurring:

14

¶ 49  I concur in the judgment affirming the trial court's decision to deny defendant pretrial release. However, I write separately to respectfully disagree with the standard of review being applied in this case.

¶ 50  This appeal presents us, not only with the question of whether the evidence was sufficient to justify defendant's pretrial detention, but how we should review the trial court's denial of defendant's Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024) motion. I agree with the lead opinion that, because defendant's Rule 604(h)(2) motion only challenged the sufficiency of the evidence at the initial detention hearing, we should apply the same standard of review that we would apply to the trial court's finding at the detention hearing itself. Where I disagree is what standard we should be applying. As I have written previously, I believe the appropriate standard for whether the State met its burden of proof at the detention hearing is whether the trial court's finding was against the manifest weight of the evidence. *People v. Pitts*, 2024 IL App (1st) 232336, ¶¶ 12-29. However, in this case, I nevertheless concur in the judgment because the result is the same under either standard.

¶ 51  JUSTICE VAN TINE, specially concurring:

¶ 52  I agree with affirming the trial court's orders imposing pretrial detention and denying defendant's Rule 604(h)(2) motion for relief. However, I write separately regarding three issues that I respectfully submit the lead opinion has not fully and correctly addressed.

¶ 53                    I. Rule 604(h)(2) Motion for Relief

¶ 54  My chief concern is that defendant improperly used a Rule 604(h)(2) motion to obtain a "do-over" of the initial pretrial detention hearing. The trial court held an initial pretrial detention hearing before the Honorable Charles Beach on April 13, 2024. At the conclusion of that hearing, Judge Beach ordered pretrial detention. After Judge Beach ruled, defendant expressed his intention to "bring *** witnesses in" at the next court date but did not indicate what their testimony would

15

concern or at what kind of hearing they would testify. As Judge Beach noted, defendant had not yet requested a continuance to present witnesses even though the Code allowed him to do so. See 725 ILCS 5/110-6.1(c)(2) (West 2022). Defendant requested a continuance only after Judge Beach completed the initial pretrial detention hearing and issued a ruling. On April 26, 2024, defendant filed a Rule 604(h)(2) motion for relief from Judge Beach's pretrial detention ruling before the Honorable Mary Cay Marubio. Judge Marubio held a hearing on defendant's motion on May 3, 2024. The State simply repeated its proffer from the initial pretrial detention hearing. Defendant called two witnesses, Shaquille Bryant and Shaquan Martin. Following the witnesses' testimony and the parties' arguments, Judge Marubio found that pretrial detention was warranted and denied defendant's Rule 604(h)(2) motion.

¶ 55 Defendant used the Rule 604(h)(2) motion for relief hearing to "redo" the initial pretrial detention hearing. I do not believe that was appropriate. A Rule 604(h)(2) motion for relief is akin to a motion to reconsider the trial court's pretrial detention ruling. " 'The purpose of a motion to reconsider is to bring to the trial court's attention changes in the law, errors in the court's previous application of existing law, and newly discovered evidence not available at the time of the hearing.' " *People v. Arze*, 2016 IL App (1st) 131959, ¶ 85 (quoting *People v. Bryant*, 369 Ill. App. 3d 54, 60 (2006)). A defendant may not use a motion to reconsider to present evidence he could have presented at the initial pretrial detention hearing. See *People v. Burnett*, 237 Ill. 2d 381, 387 (2010). By way of analogy, a defendant could not use a motion to reconsider sentence to present mitigation witnesses he could have presented at the sentencing hearing, and a defendant could not use a motion for new trial to call witnesses he could have called at the trial itself.

¶ 56 In this case, defendant should have asked the trial court to commence and continue, or simply continue, the initial pretrial detention hearing so he could present witnesses instead of filing a Rule 604(h)(2) motion to obtain a "do-over" of that hearing. Judge Beach reminded defendant that

seeking a continuance was an option, yet defendant waited until the next court date to spring two additional witnesses on a different trial court judge, cloaking the "re-do" of the pretrial detention hearing as a Rule 604(h)(2) motion for relief. I encourage our trial courts to be vigilant against this practice, which could result in unnecessary and inappropriate relitigation of the initial pretrial detention hearing. The State is not required to repeatedly prove the three elements it must prove to obtain a pretrial detention order at the initial hearing. See, *e.g.*, *People v. Harris*, 2024 IL App (2d) 240070, ¶ 41; *People v. Casey*, 2024 IL App (3d) 230568, ¶ 13. Following the initial pretrial detention hearing, the court need find only that "continued detention is necessary to avoid a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case, or to prevent the defendant's willful flight from prosecution." 725 ILCS 5/110-6.1(i-5) (West 2022).

¶ 57 Therefore, I would hold that a defendant may not use a Rule 604(h)(2) motion to present witnesses he could have presented at the initial pretrial detention hearing. Rather, the defendant must seek a continuance of the initial pretrial detention hearing pursuant to section 110-6.1(c)(2) if he wishes to present witnesses who are not currently available. Accordingly, I would find that defendant should not have been allowed to call Bryant and Martin at the hearing on his Rule 604(h)(2) motion but that the trial court correctly denied that motion.

¶ 58                                     II. Standard of Review

¶ 59 I also disagree with the lead opinion as to the applicable standard of review. Defendant appeals both the initial pretrial detention ruling and the denial of his Rule 604(h)(2) motion. I would review the trial court's pretrial detention ruling for an abuse of discretion. *People v. Whitmore*, 2023 IL App (1st) 231807, ¶ 18; *People v. Bradford*, 2023 IL App (1st) 231785, ¶ 33. I would also review the trial court's ruling on defendant's Rule 604(h)(2) motion for an abuse of discretion. While Rule 604(h)(2) does not provide a specific standard of review when a defendant

appeals the denial of a motion for relief (Ill. S. Ct. R. 604(h)(2) (eff. April 15, 2024)), as explained above, a Rule 604(h)(2) motion for relief is similar to a motion to reconsider. We generally review a trial court's ruling on a motion to reconsider for an abuse of discretion. *People v. Jenkins*, 2023 IL App (5th) 210085, ¶ 22. Therefore, I would review all the trial court's rulings in this case for an abuse of discretion. An abuse of discretion occurs when the court's ruling is fanciful, arbitrary, or unreasonable or where no reasonable person would agree with the court's position. *Bradford*, 2023 IL App (1st) 231785, ¶ 33.

¶ 60                                III. Pretrial Detention Ruling

¶ 61  Finally, I write to clarify why pretrial detention is appropriate in this case. The alleged facts of this incident suggest that defendant took the opportunity to prey on an intoxicated teenage girl and used the offer of a ride home to sexually assault her. The fact that defendant is a 31-year-old man means that he may appear to be a trustworthy authority figure to young people and that he could exploit a similar opportunity again in the future. The scenario that the State claims occurred here would be relatively easy for defendant to repeat if he were not detained, even if he were on electronic monitoring. That is why Judge Beach ordered pretrial detention. I agree with that decision.

¶ 62  Defendant's primary argument is that, pursuant to *Stock*, the trial court could not base its finding that he poses a threat to the safety of individuals or the community order solely on the allegations in this case. *Stock* held that the State failed to establish that no conditions of pretrial release could mitigate the threat defendant posed to the community because it proffered no evidence to support that conclusion and relied solely on the allegation that the defendant committed aggravated battery in that case. *Stock*, 2023 IL App (1st) 231753, ¶ 17. I agree with the holding of *Stock* in general, but that does not equate to error in this case. In the case at bar, the State did not merely recite the elements of criminal sexual assault and ask that defendant be

18

detained on that basis alone. Rather, the State argued that defendant's alleged behavior created a risk that he could, with relative ease, prey on intoxicated teenagers in the future if granted pretrial release. That is a real and practical concern, and it was an appropriate basis for the trial court to order pretrial detention. The Code requires that the determination of dangerousness and the inadequacy of less restrictive conditions be "based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(e)(2), (3) (West 2022). Moreover, the Code outlines a list of factors to be considered in determining dangerousness, such as the nature and circumstances of the charged offense, including whether it is a sex offense, and the age of any victim or complaining witness. *Id.* § 110-6.1(g). Those factors supported the trial court's finding of dangerousness in this case.

¶ 63 *People v. Carpenter*, 2024 IL App (1st) 240037, guides my analysis. In that case, the 29-year-old defendant was charged with two counts of predatory criminal sexual assault of a child based on allegedly engaging in oral sex with a 5-year-old. *Id.* ¶¶ 3-4. The State proffered that the complaining witness's sister corroborated some aspects of her story, there was a "strong probability" that defendant's DNA was found in the complaining witness's underwear, and the defendant admitted that the complaining witness performed oral sex on him. *Id.* ¶ 4. The trial court ordered pretrial detention. *Id.* ¶ 6. We affirmed the trial court's finding of dangerousness, rejecting his contention that "a defendant can only be detained based on facts *other than* the crime charged." (Emphasis in original.) *Id.* ¶ 14. On the contrary, "[t]he nature and circumstances of the offense charged is the *prime* consideration in determining the conditions of release, if any (*id.* § 110-5(a)(1)), and in denying pretrial release (*id.* § 110-6.1(a)), including in making the dangerousness determination (*id.* § 110-6.1(g)(1))." (Emphasis in original.) *Id.* In *Carpenter*, we also agreed with the trial court's finding that no conditions of pretrial release could mitigate the threat defendant posed because he " 'is alleged to have sexually abused a very young child with whom he was briefly left alone. There is no way to guarantee that he will not come into contact with other

children if released.' " *Id.* ¶ 16. That reasoning parallels the reasoning of both trial court judges in this case. Altogether, *Carpenter* illustrates how a detailed proffer like the State made in this case can satisfy the "specific articulable facts of the case" requirement, even if the facts proffered are coextensive with the offenses charged. See *id.* ¶ 19.

¶ 64 Accordingly, I agree with affirming the trial court's rulings granting the State's petition for pretrial detention and denying defendant's Rule 604(h)(2) motion for relief, but I encourage our trial courts to prohibit defendants from using Rule 604(h)(2) motions to obtain "do-overs" of initial pretrial detention hearings.

*People v. Williams*, 2024 IL App (1st) 241013

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 24-CR-04602-01; the Hon. Mary Cay Marubio and the Hon. Charles Beach II, Judges, presiding. |
| **Attorneys for Appellant:** | Ari Williams, of Ari Williams Law, LLC, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Lee Farbman, Assistant State's Attorney, of counsel), for the People. |