NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241615-U

NO. 4-24-1615

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 27, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Winnebago County |
| KENNETH DONTA TOWNSEND, | ) | No. 23CF2825 |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | Honorable |
| | ) | Brendan A. Maher, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Steigmann and Knecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed, finding the circuit court did not err in denying
defendant pretrial release.

¶ 2        Defendant, Kenneth Donta Townsend, appeals the circuit court's order denying

him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code)

(725 ILCS 5/art. 110 (West 2022)), hereinafter as amended by Public Act 101-652, § 10-255

(eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104,

§ 70 (eff. Jan. 1, 2023) (amending various provisions of the Act). On appeal, defendant argues

the court erred in finding the State proved by clear and convincing evidence he committed a

detainable offense because the parties presented contradictory proffers. We affirm.

¶ 3                                I. BACKGROUND

¶ 4         On November 29, 2023, the State charged defendant with first degree murder (720 ILCS 5/9-1(a)(1) (West 2022)).

¶ 5         On November 30, 2023, the State filed a petition seeking to deny defendant pretrial release, and the circuit court conducted a hearing on the petition. According to the factual summary, officers responded to a report of gunfire during the early morning hours of November 26, 2023. When they arrived, they entered a large room on the ground floor of the building, with disc jockey (DJ) equipment—speakers, lighting, and a turntable—plugged into the wall. Officers observed blood smeared on the floor near the entryway, along with a single cartridge case. After officers arrived on the scene, Kevin Harris was admitted to a nearby hospital to receive treatment for a gunshot wound. Harris later died from his injury. Officers learned Harris was the victim of the shooting in question, which occurred during an afterparty. Officers received anonymous tips saying Harris was shot by "Bam," who was identified as defendant.

¶ 6         Officers spoke with Nicholas Jernigan, who was the DJ playing music at the party where the shooting occurred. Jernigan saw defendant "holding [Harris] up against a door," and defendant appeared to be "attacking" Harris. Jernigan walked over and tried to break up the altercation. Other partygoers grabbed Jernigan and pulled him away from defendant. As they did so, Jernigan observed defendant holding a gun in his right hand. Jernigan saw defendant raise the gun, point it at Harris, and fire it. Harris stumbled away "having been shot in the torso." Jernigan subsequently participated in a photo lineup and identified a picture of defendant as "Bam," the individual who shot Harris.

¶ 7         The State argued defendant posed a real and present threat to the community, noting his "extensive criminal history," which dated back to 2005 and included a federal conviction for conspiracy to possess a controlled substance with the intent to distribute, state

convictions for manufacturing and delivering cannabis (between 30 and 500 grams), possession of a controlled substance, and a dozen traffic-related offenses, ranging from driving on a revoked license to drag racing to transporting alcoholic liquor in a motor vehicle. When the shooting occurred, defendant was on federal supervision. As a felon, defendant was forbidden from possessing the firearm he allegedly used to shoot Harris. Defendant scored a 7 out of 14 on the Virginia Pretrial Risk Assessment Instrument-Revised (VPRAI-R), which qualified him as having a "moderate high" risk to reoffend. In addition to defendant's criminal history, the assessment noted defendant was under active community supervision, had a history of drug abuse, and had two or more failures to appear. Based on this, combined with the factual allegations and the seriousness of the charge, the State argued the circuit court should deny pretrial release.

¶ 8        Defendant argued the State did not show the proof was evident or presumption great he committed the charged offense because, according to defense counsel, "[W]e have one person saying that this happened and another person denying it," which he insisted was "not clear and convincing evidence that it happened." Counsel noted the shooting occurred during a crowded party, but only one witness identified defendant as the shooter. Defendant cooperated with law enforcement and denied any involvement in the shooting. Defendant had lived in the area since 2001, except when he was incarcerated, and he had significant ties to the community. Defendant had been employed at the same location for approximately a year, and there was "no indication that he's not in compliance with federal probation at this point in time."

¶ 9        The circuit court granted the petition to deny pretrial release, finding the State proved by clear and convincing evidence the proof was evident or presumption great defendant committed a detainable offense, he posed a real and present threat to the community, and no less

restrictive conditions could mitigate that threat. The court noted Jernigan saw defendant attacking Harris and attempted to separate them. As others pulled Jernigan away, he witnessed defendant raise a firearm, point it at Harris, and fire it at Harris. The court also highlighted the seriousness of the charged offense, the nature of the underlying facts of the case, the "clarity of the statement" provided by Jernigan, defendant's criminal history, the fact the shooting occurred while defendant was on probation, and defendant's "moderate high" risk of reoffending per the VPRAI-R assessment.

¶ 10        At the hearing's conclusion, the circuit court admonished defendant that he was required to file a notice of appeal within 14 days to preserve his right to appeal the detention determination. Defendant did not do so.

¶ 11        On December 15, 2023, a grand jury indicted defendant on six counts of first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2022); 730 ILCS 5/5-8-1(d)(i), (iii) (West 2022)) and one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)).

¶ 12        On October 10, 2024, defendant waived his right to counsel and filed a *pro se* motion entitled "Motion for Provisions of the Safety, Accountability, Fairness and Equity-Today Act, Pretrial Release Detention, 'Grounds for Relief.' " The motion asserted, *inter alia*, he had been incarcerated for more than 90 days without being tried, which violated his right to a speedy trial. Defendant filed two more motions raising the same argument on October 15 and 16.

¶ 13        On October 21, 2024, the circuit court conducted a hearing on defendant's *pro se* motions, which it described as "asking for the Court to reconsider whether or not [defendant] should be released from custody." Defendant repeatedly insisted his detention hearing counsel was ineffective for not advising him of the 14-day deadline to file a notice of appeal, though the

court confirmed defendant was fully and properly admonished during the detention hearing. The court informed defendant the central question regarding the *pro se* motions was whether his circumstances had changed to warrant release. The court denied the motions, finding no change in defendant's circumstances and determining his speedy trial claim lacked merit because his attorneys requested multiple continuances during the case's pendency.

¶ 14    On November 6, 2024, defendant filed a *pro se* motion entitled "Motion for Provision of Safety, Accountability, Fairness and Equity-Today Act. Pretrial 'Release/Relief' detention. Grounds for 'Reconsideration' Appeal," which cited section 110-6.1(g) of the Code (725 ILCS 5/110-6.1(g) (West 2022)) and Illinois Supreme Court Rule 604(h) (eff. Apr. 15, 2024). Defendant argued the State did not prove he committed the charged offense by clear and convincing evidence because its proffer relied on hearsay. He argued Jernigan's account of the events was not credible and the State presented no other witnesses from the party who identified defendant as the shooter. Defendant also claimed he was not a danger to the community, citing his family connections to the area and noting his criminal history mostly consisted of traffic-related offenses. Defendant requested pretrial release with electronic monitoring.

¶ 15    During the subsequent motion hearing on November 14, 2024, defendant argued Jernigan was not credible and no other witnesses corroborated his account of the shooting. The State conceded Jernigan had a warrant for violating his pretrial release terms, for which he received leniency in exchange for his cooperation, but argued this was not enough to motivate Jernigan to falsely accuse defendant of murder. The State asserted the evidence at trial would show defendant arranged for his girlfriend to destroy his cell phone before his arrest. Cell tower records would show defendant went "someplace downtown" after the shooting, rather than back to his residence, which is what he told law enforcement. The State also said, "[W]e have a

witness who claims the defendant made a confession to him *** or overheard him, at least." The State clarified it presented this new evidence to demonstrate its case did not rely solely on Jernigan's testimony, saying, "It's not just Mr. Jernigan. We have other facts as well that will corroborate *** defendant's involved in this crime, certainly his consciousness of guilt." The circuit court denied the motion to reconsider.

¶ 16       This appeal followed.

¶ 17                              II. ANALYSIS

¶ 18       On appeal, defendant argues the circuit court erred in finding the State proved by clear and convincing evidence the proof was evident or presumption great that he committed a detainable offense. We disagree.

¶ 19                              A. Jurisdiction

¶ 20       As an initial matter, we have jurisdiction to consider defendant's argument on appeal. When the circuit court initially denied defendant pretrial release on November 30, 2023, defendant was required to file a notice of appeal within 14 days if he wished to challenge the detention order. See Ill. S. Ct. R. 604(h) (eff. Oct. 19, 2023). Defendant failed to do so. However, Rule 604(h) was subsequently amended to remove the 14-day filing deadline (see Ill. S. Ct. R. 604(h) (eff. Apr. 15, 2024)), and the First and Third Districts have found the amendment "was a procedural change that applies retroactively." *People v. Davis*, 2024 IL App (1st) 241747, ¶ 28; see *People v. Perez-Salazar*, 2024 IL App (3d) 240326-U, ¶ 16 ("Our supreme court has held that procedural changes to laws apply to ongoing proceedings. [Citation.] A notice of appeal is a procedural mechanism."); *cf. People v. Lasenby*, 2024 IL App (1st) 240918-U, ¶ 26 (finding no jurisdiction where the defendant filed his notice of appeal prior to the amendment, such that the proceedings were no longer ongoing and the amendment did not apply retroactively to the

defendant's case). Here, defendant's case was ongoing because he continued to be detained pretrial, and therefore the amendment to Rule 604(h) applies retroactively to this case. See *Davis*, 2024 IL App (1st) 241747, ¶ 29.

¶ 21 The current iteration of Rule 604(h) requires a defendant to file "a written motion requesting the same relief to be sought on appeal and the grounds for such relief." Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). Defendant's *pro se* motion filed on November 6, 2024, cited Rule 604(h), and in it, he argued the State failed to prove by clear and convincing evidence he committed the charged offense. Defendant now raises the same argument on appeal. Thus, defendant has satisfied his obligation under Rule 604(h)(2), and we have jurisdiction to consider his claim.

¶ 22                                          B. Pretrial Detention

¶ 23 Under the Code, it is presumed all criminal defendants are entitled to pretrial release, subject to certain conditions. 725 ILCS 5/110-2(a) (West 2022). The State may seek a defendant's pretrial detention if the defendant is charged with a detainable offense as enumerated in the Code and, after a hearing, the circuit court finds the defendant's release would present "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," or the defendant "has a high likelihood of willful flight to avoid prosecution." 725 ILCS 5/110-6.1(a)(1), (8) (West 2022). The State bears the burden of proving "by clear and convincing evidence that any condition of [pretrial] release is necessary." 725 ILCS 5/110-2(b) (West 2022). When the parties proceed solely by proffer during a detention hearing, we review the circuit court's detention determination *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 24 Defendant argues the State failed to show the proof was evident or presumption

great he committed first degree murder because the State's proffer relied on a single eyewitness's identification, which defendant countered by claiming he was not the shooter. Defendant also contends the circuit court erred by conducting a full detention hearing when it considered his *pro se* motion to reconsider on November 14, 2024, and we should not rely on the new evidence presented at that hearing on appeal.

¶ 25 The circuit court's detention determination was not in error. Jernigan provided law enforcement with a clear and detailed account of the shooting, which the State presented by way of proffer during the initial detention hearing. The State is permitted to "present evidence at the hearing by way of proffer based upon reliable information," and "[t]he rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing." 725 ILCS 5/110-6.1(f)(2), (5) (West 2022). According to the State's proffer, Jernigan saw defendant "attacking" Harris by holding him up against a door. Jernigan approached them to break up the altercation. Other partygoers pulled Jernigan away. As he was being pulled away, Jernigan saw defendant raise a gun, point it at Harris, and shoot Harris in the torso. Harris died soon after. Jernigan subsequently viewed a photo lineup, and he identified a picture of defendant as the man who shot Harris. In finding the State met its burden of showing the proof was evident or presumption great that defendant committed a detainable offense, the court highlighted "the clarity of the statement" Jernigan provided. While defendant says he did not shoot Harris, his bald and unsupported assertions do not outweigh the State's proffer, which is buoyed by an extremely in-depth account from an eyewitness who observed the shooting from point-blank range. Based on this proffer, the court did not err in finding the State showed by clear and convincing evidence the proof was evident or the presumption great defendant committed a detainable offense. See 725 ILCS 5/110-6.1(e)(1) (West 2022).

¶ 26 Finally, defendant's contention the circuit court erred in conducting a full hearing on his *pro se* motion for relief lacks merit. "[A] proper Rule 604(h)(2) hearing *** consist[s] of an examination of the State's evidence at the initial detention hearing and a determination of whether the State had met its burden of proof." *People v. Williams*, 2024 IL App (1st) 241013, ¶ 28. Defendant claims the court considered new evidence during the hearing on November 14, 2024, but the record shows the State presented new evidence merely to combat defendant's repeated erroneous insistence the State's case rested solely on Jernigan's testimony. The record further indicates the court did not rely on the new evidence in denying defendant's motion for relief; instead, the court reiterated the strength of the proffered evidence presented by the State during the initial detention hearing. Even if the court had considered the new evidence, the error would have been harmless because we would reach the same conclusion after excluding the new evidence mentioned during the hearing on the motion to relief. See *Williams*, 2024 IL App (1st) 241013, ¶ 29.

¶ 27                                    III. CONCLUSION

¶ 28         For the foregoing reasons, we affirm the circuit court's judgment.

¶ 29         Affirmed.