NOTICE
Decision filed 01/28/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250936-U

NO. 5-25-0936

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Edwards County. |
| | ) | |
| v. | ) | No. 25-CF-26 |
| | ) | |
| HUNTER B. FUTRILL, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Justices Vaughan and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2    The defendant, Hunter B. Futrill, appeals the August 29, 2025, order from the Edwards County trial court that granted the State's petition to deny him pretrial release and the September 12, 2025, denial of his motion for relief and immediate release. For the following reasons, we affirm.

¶ 3                                   I. BACKGROUND

¶ 4    On August 26, 2025, the defendant was charged by information with two counts of aggravated criminal sexual abuse, Class 2 felonies, in violation of section 11-1.60(d) of the Criminal Code of 2012 (Criminal Code) (720 ILCS 5/11-1.60(d) (West 2024)), and one count of

1

grooming, a Class 4 felony, in violation of section 11-25(a) of the Criminal Code (*id.* § 11-25(a)). The aggravated criminal sexual abuse charges alleged that the defendant, a person over 17 years old, committed acts of sexual conduct with L.M., who was at least 13 years old but under 17 years old, and at least 5 years younger than the defendant, in that the defendant, for the purpose of sexual gratification, as alleged in count I, fondled L.M.'s breasts, and as alleged in count II, had L.M. touch the defendant's penis with her foot. The grooming charge alleged that the defendant knowingly solicited L.M., a 15-year-old minor, to engage in unlawful sexual conduct with the defendant.

¶ 5    The State filed a verified petition to deny the defendant pretrial release on August 27, 2025, alleging that the defendant was charged with a detainable offense and that his release posed a real and present threat to the safety of any person or persons in the community, pursuant to section 110-6.1(a)(5) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/110-6.1(a)(5) (West 2024)). The trial court held a hearing on the State's petition on August 29, 2025.

¶ 6    The State proceeded by proffer and stated that the victim came forward when she was 17 years old and disclosed many incidents with the defendant that occurred over approximately two years. The time frame for the incidents was when L.M. was 14 to 15 years old, and she was the defendant's stepsister. At the time, L.M.'s mother was married to the defendant's father, but they are no longer married. L.M. reported that starting at the age of 14, the defendant, who was 8 years older than her, would kiss and touch L.M.'s buttocks and breasts, and he would offer financial payment to L.M. for physical acts or sexual conversations. One incident involved L.M., under the belief she would be paid, touching her foot to the defendant's penis outside of his clothes in order to cause an erection. The defendant would also request and/or offer to pay L.M. to sit on his lap, and on multiple occasions would pin L.M. against the wall and call her names. The defendant

2

would often offer payment, ranging from a few cents to $20, but did not always pay L.M. She also reported that the defendant showed L.M. pornography. In addition to the sexual conversations, the defendant spoke with L.M. multiple times about what the defendant believed the age of consent to be.

¶ 7    The State said that the Edwards County Sheriff's Department and then the Illinois State Police (ISP) investigated L.M.'s claims. ISP attempted to interview the defendant, but did not do so after he requested a lawyer. The offenses were alleged to have occurred when L.M. was 14 to 15 years old, and the defendant was 22 to 23 years old.

¶ 8    The State then argued that the defendant's offenses were detainable under the statute due to the felony classification of the offenses, and that L.M.'s accounts provided very specific evidence of the offenses. The State said that the defendant's release posed a danger not only to the victim, but also to the community as a whole, due to the fact that the defendant was alleged to have committed sexual offenses against the victim for years. The State further argued that no condition or combination of conditions would protect the victim or community because there would be no way to "adequately monitor" the defendant. The State noted that, while the pretrial conditions can be set by the trial court, "a person can decide to follow them or not follow them." Specifically, the trial court could order the defendant to not be alone in the presence of any minors, but that condition would be difficult for pretrial services to monitor due to not being with the defendant at all times. The State argued that electronic home monitoring (EHM) would tell pretrial services where the defendant was, but not who he was around or what he was doing. The State asked for the defendant to be detained.

¶ 9    The trial court asked the State if there was any other evidence outside of the victim's statement. The State said that the ISP investigation yielded some electronic communication

3

screenshots that showed apologies from the defendant to L.M., but the nature of the conversation had not yet been determined. Additionally, the State said that the forensic interviewer found L.M. to be a credible witness. ISP investigators had not yet completed formal interviews of any family members, but the investigation was ongoing.

¶ 10    The defense then argued that the charged offenses were not specifically enumerated in the statute as detainable, but instead fell under the "other felonies" category. Defense counsel stated, "The general provision of other felonies, in my opinion, is not a sufficient mechanism to trigger a pre-trial detention on the facts of this case." Defense counsel then stated that conditions, such as EHM, would be sufficient to mitigate any danger to the community or the victim, and the defendant could stay with his grandmother, father, or mother in neighboring towns. All three people would be willing to comply with a court order that the defendant not be around any minor individual. The defense concluded its argument by noting that the defendant was 25 years old and had no prior criminal history.

¶ 11    The trial court asked the State to clarify its verified petition. The State explained that it was proceeding under the language of section 110-6.1(a)(1.5) of the Code (725 ILCS 5/110-6.1(a)(1.5) (West 2024)), which includes as detainable "any other felony which involves the threat of or infliction of great bodily harm or permanent disability or disfigurement" because sexual abuse can inflict great bodily harm.

¶ 12    The trial court stated that it considered the defendant's lack of criminal history and local ties to the community to weigh in his "benefit." It then noted, however, that the crimes alleged were extremely serious and that strong evidence was proffered that those crimes had occurred. The trial court found that the defendant's offenses were detainable in that they were felonies that involved the threat or infliction of great bodily harm. The trial court further stated that the

4

defendant's release would pose a real and present threat not only to the victim, but to the community, and that no condition or combination of conditions would protect them. The trial court granted the State's petition and entered a written order on August 29, 2025, finding that the defendant was detained on the dangerousness standard, and that incarceration was necessary due to the seriousness of the charges, the strength of the State's case, and the inability of pretrial services to adequately protect the alleged victim or the community.

¶ 13    The defendant filed a motion for relief and immediate release on September 5, 2025. The motion argued that the trial court erred in granting the State's petition to deny the defendant's pretrial release because the State failed to prove by clear and convincing evidence that the proof was evident or the presumption great that the defendant had committed a qualifying offense, that he posed a real and present threat to any person or persons or the community, and that no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons. Specifically, the defendant argued that the trial court erred because it failed to consider the defendant's ties to the community; physical and mental health conditions; willingness to abide by any terms of pretrial release; lack of criminal history; and, that no weapon was used in the alleged offense.

¶ 14    The motion was heard on September 12, 2025. At the beginning of the hearing, the defendant sought to introduce character letters, to which the State objected. The State said that it had not had sufficient time to review the letters; additionally, the State cited to *People v. Williams*, 2024 IL App (1st) 241013, ¶¶ 28-29, which held that no new evidence should be presented during a motion for relief hearing. The defendant noted that *Williams* was a recent case from the First District Appellate Court, and then argued that if the trial court would not consider the letters in support of the motion, it should consider the letters pursuant to its general duty to revisit the

5

defendant's detention at every court appearance. The trial court did not allow the letters as evidence at the hearing.

¶ 15    The defendant then argued that conditions would have mitigated the defendant's real and present threat to any person. Specifically, the defendant argued that EHM with his relatives would be sufficient where his mother and father had indicated that they would sign affidavits stating that they would report any violations of any conditions of pretrial release. The defendant argued that those conditions would be appropriate and asked for release on those terms.

¶ 16    The State then provided a factual proffer of the case where it restated the facts from the original detention hearing, and also stated that the defendant and L.M. had an arrangement where the defendant was permitted to ask L.M. one sexual question every holiday; that the defendant and L.M. were at a store in the mall called Spencer's and the defendant tried to persuade L.M. to go to the back of the store to look at sexual items; that the defendant tied L.M.'s hands together for a sexual purpose; and, that the defendant sent L.M. crude text messages including one asking whether she would like one finger or two. We note that while the State objected to the defense presenting new evidence at the hearing, specifically character letters, and those letters were excluded based on the State's objection to the introduction of any new evidence, the foregoing listed facts proffered by the State were also additional evidence not presented at the original detention hearing. The defense did not object to the proffer of the additional information. The State then argued that the original finding of the trial court was correct and that no condition or combination of conditions would mitigate the defendant's risk to the victim or the community.

¶ 17    The defendant responded, noting that the State had not alleged any criminal conduct by the defendant or contact with the victim since April 2024, approximately a year and a half prior to the hearing. Additionally, the victim did not live in the area anymore, and, as such, EHM would be

sufficient. The defense concluded its argument, noting that the defendant was presumed innocent. No further evidence or argument was presented.

¶ 18    The trial court stated that it considered the defendant's lack of criminal history, his score of zero on the risk assessment instrument, and his local ties to the area. The trial court said that the charges were very serious and the State presented strong evidence of the offenses. The trial court further stated that the defendant met the dangerousness standard, noting that the defendant was alleged to have committed the acts knowing they were not just wrong but illegal, and that the victim was a very important part of the State's case. The trial court stated that no condition or combination of conditions would assure that the defendant would abide by the trial court's orders to not violate the law and to abide by the terms of home confinement. The trial court denied the defendant's motion. The defendant filed his notice of appeal on October 24, 2025.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, the defendant argues that the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate any risk posed by his release. The defendant does not challenge the finding that the State proved, by clear and convincing evidence, that the proof is evident or the presumption is great that the defendant committed a qualifying offense, or that the defendant posed a real and present threat to the safety of any person or persons or the community. These issues have thus been abandoned on appeal. See *People v. Drew*, 2024 IL App (5th) 240697, ¶ 21; Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024) ("If a memorandum is filed, it must identify which issues from the motion for relief are advanced on appeal.").

¶ 21    Pretrial release—including the conditions related thereto—is governed by article 110 of the Code (725 ILCS 5/art. 110 (West 2024)), as amended by Public Act 101-652 (eff. Jan. 1, 2023),

7

commonly known as the Pretrial Fairness Act. A defendant's pretrial release may be denied only in certain statutorily limited situations. 725 ILCS 5/110-6.1 (West 2024). Upon filing a timely, verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution. *Id.* § 110-6.1(e), (f). The State or the defendant may present evidence to the trial court by way of proffer based upon reliable information. *Id.* § 110-6.1(f)(2). The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense, and the trial court concludes the defendant poses a real and present threat to the safety of any person or the community (*id.* § 110-6.1(a)(1)-(7)) or there is a high likelihood of willful flight to avoid prosecution (*id.* § 110-6.1(a)(8)).

¶ 22    Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the trial court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. In the present matter, the parties proceeded solely by proffer, so we will employ a *de novo* review.

¶ 23    Section 110-6.1(g)(1)-(9) of the Code (725 ILCS 5/110-6.1(g)(1)-(9) (West 2024)) provides a nonexhaustive list of factors that trial courts should consider in determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. No one factor is determinative, and the court must base its decision on an individualized assessment.

*People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 24    Once a court determines that the defendant poses a threat to the safety of any individual or the community, the trial court must determine whether the State has met its burden by clear and convincing evidence, and what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2024). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person;[1] (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. *Id.* The statute lists no singular factor as dispositive. See *id.* The nature and circumstances of the underlying offense factor is "just one factor to consider in determining whether the threat posed can be mitigated by conditions of release." *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 19.

¶ 25    The defendant argues on appeal that sufficient pretrial release conditions could have been ordered to mitigate any risk of dangerousness, specifically, EHM and no contact with the victim or other minors. We do consider that the defendant had no prior criminal history and scored a zero

---

[1]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2024).

9

on the risk assessment instrument. However, we must also look to the nature and circumstances of the offense.

¶ 26    The defendant was charged with two counts of criminal sexual abuse and one count of grooming of a minor, all felony counts and all sex offenses. The offenses were alleged to have occurred over the course of approximately two years while the defendant was in a stepsibling relationship with L.M. while she was 14 to 15 years old, and the defendant was 22 to 23 years old. The defendant would request L.M. perform tasks for his sexual gratification in exchange for the promise of payment, such as sitting in his lap or touching his penis over his clothing with her foot. He would engage in sexual conversations with L.M., talking to her about the age of consent, indicating that the defendant knew his actions were illegal and wrong. The offenses were alleged to have occurred within their shared residence, where they lived with their parents. While the defendant stated that he had not made contact with L.M. for over a year, this is likely due to the fact that they no longer lived in the same residence because their parents divorced, not due to the defendant's own decision to cease the activity.

¶ 27    The defendant argues that he would be willing to abide by any terms of pretrial release, including no contact with minors, but his conversations with the victim showed that he knew interacting with his stepsister, a minor, in a sexual manner was inappropriate. He engaged in the behavior regardless of this understanding. While EHM was available and would indicate the defendant's location, it would not show if the defendant was in the presence of a minor. See *People v. Willenborg*, 2023 IL App (5th) 230727, ¶ 20 ("[T]he electronic monitoring device would not indicate defendant's proximity to the minor. Moreover, there is no way to ensure that the defendant would comply" with a restriction to stay away from minors.). Accordingly, we find no error in the trial court's granting of the State's petition to detain, and denial of the defendant's motion for

relief, where, upon our independent review, we find no error in the trial court's determination that no condition or combination of conditions would mitigate the risk posed to the victim or the community.

¶ 28                                    III. CONCLUSION

¶ 29     We affirm the trial court's order detaining the defendant and denying his motion for relief.

¶ 30     Affirmed.