NOTICE
Decision filed 05/01/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260062-U

NO. 5-26-0062

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Vermilion County. |
| | ) | |
| v. | ) | No. 25-CF-221 |
| | ) | |
| BRYCE R. TUCKER, | ) | Honorable |
| | ) | Mark S. Goodwin, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Sholar and Bollinger concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motions for relief are affirmed.

¶ 2   The defendant, Bryce R. Tucker, appeals the April 2, 2025, order from the trial court of Vermilion County that granted the State's petition to deny pretrial release, and the October 1, 2025, and January 7, 2026, denials of his motions for relief. For the following reasons, we affirm.

¶ 3   I. BACKGROUND

¶ 4   A. Offense and Initial Detention

¶ 5   On April 1, 2025, the defendant was charged with criminal sexual assault, a Class 1 felony (count I); aggravated domestic battery, a Class 2 felony (count II); two counts of aggravated battery, Class 3 felonies (counts III and IV); two counts of domestic battery, Class 4 felonies

1

(counts V and VI); and unlawful restraint, a Class 4 felony (count VII). The defendant was indicted by a grand jury on all seven counts on April 18, 2025. On June 24, 2025, the defendant was indicted by a grand jury with criminal sexual assault, a Class 1 felony (count VIII).

¶ 6    On April 1, 2025, the State filed a verified petition to deny the defendant pretrial release. The petition alleged that the defendant committed a detainable offense, that he posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate the real and present threat posed by the defendant.

¶ 7    The trial court held a hearing on the State's petition on April 2, 2025. The State proceeded by proffer and provided the factual basis for the incident that occurred on March 26, 2025. The defendant was married to the victim, Heather Tucker, and the parties were going through a divorce. At the time of the offense, Heather and the defendant lived separately. Previously when they lived together, Heather purchased two Glock handguns, as she has a Firearm Owner's Identification (FOID) Card. The defendant did not possess a FOID card, but he did possess the guns at one time. The defendant took Heather's guns and gave them to a friend. Heather believed that the defendant no longer had access to the guns on the date of the incident.

¶ 8    On March 26, 2025, Heather agreed to drive the defendant home following a medical procedure for which he was anesthetized. When Heather and the defendant arrived at the defendant's home, he initially refused to get out of the car. An argument ensued and then the defendant dragged Heather into his home and told her, "you're f**king done, I've been dealing with this long enough." The defendant sat Heather down on the back porch and she attempted to fight him in self-defense. He then dragged her into the kitchen, and he told her that he was going to kill her and himself. The defendant then pulled a pistol from a kitchen drawer and pushed Heather onto the floor with his arm against her neck and "struck her in the head with a fist and the

2

firearm." At that point, Heather was dizzy from her injuries. The defendant was still armed as he instructed Heather to clean herself up and take a shower. When Heather was in the shower, the defendant told her "that she was going to have sex with him." The State said,

> "[Heather] described telling him that she would and she actually described to medical personnel that she didn't believe that the defendant forcibly raped her, but she did in the same vein describe that he could have asked her to do anything at that point and she would have done it. She felt that it was not safe for her to say no to anything that the defendant was asking her and she did describe fearing for her life."

¶ 9    After sexual intercourse between the defendant and Heather, she was able to calm the defendant down. During that time, the defendant told Heather not to tell the police anything and that if he was approached by law enforcement, he would "commit suicide by cop." Heather convinced the defendant to let her leave to feed her cats. The following day, Heather went to the hospital for her injuries. She received staples in her head and the State tendered photographs showing the staples, marks, abrasions, and bruising along her body.

¶ 10    Due to the defendant's statements about "suicide by cop," law enforcement contacted the defendant's divorce attorney and arranged for his surrender. After his arrest, a search warrant was issued to attempt to recover the handgun, but it had not yet been located at the time of the hearing.

¶ 11    The State proffered that there were two orders of protection (OP) between the defendant and Heather in 2022 and 2024, stating that the current offense was "not a one-off incident." The defendant also had a history of domestic battery and had access to firearms, which made him extremely dangerous to Heather. The State argued that the defendant was also dangerous to law enforcement due to his expression of "homicidal ideation toward law enforcement." The State asked that the defendant be detained.

3

¶ 12    Defense counsel proceeded by proffer, first addressing the pretrial investigation report (report). The report showed an OP from 2024 that was for a different man with the same name as the defendant. Further, the State referenced a prior felony conviction for the defendant, but the defendant had pleaded guilty to a misdemeanor offense stemming from a felony charge.

¶ 13    Defense counsel proffered that the defendant and Heather had an ongoing divorce case that had been pending for approximately two years. Additionally, Heather had withdrawn both OPs against the defendant in 2022 and 2024. As to the risk to law enforcement, the defendant turned himself in, and that risk was "based solely upon allegations by Heather." The firearms were also not located in the defendant's residence. In September 2024 the defendant removed the firearms from the home, and he did not have a FOID card. This information was included in the 2024 OP.

¶ 14    Defense counsel proffered that the parties lived in different towns, and the defendant was the primary care provider of their minor child. The defendant was self-employed. Defense counsel stated that a court appearance occurred in the divorce case days before the hearing on the petition to deny pretrial release and at that time, the parties entered an agreement that they would live in their own residences, and a temporary parenting time order placed the minor child in Heather's care. Defense counsel stated, "So to the extent we now come in and say, well, she needs protection, Monday, Judge, she was satisfied with the agreement we had in that case." Defense counsel said that sufficient conditions existed to mitigate any risk, such as electronic monitoring.

¶ 15    The trial court found that the State met its burden of proving by clear and convincing evidence that the proof is evident or the presumption great that the defendant committed a qualifying offense, that the defendant's release posed a real and present threat to Heather, and that no conditions would mitigate that threat. The trial court ordered the defendant detained. The trial court entered a written order the same day. The order stated that the court considered the following

4

for its denial of pretrial release: the nature and circumstances of the offenses charged; the defendant's psychological, psychiatric or other social history indicates a violent, abusive or assaultive nature; the identity of any person whose safety the defendant was believed to pose a threat, and the nature of the treat; any statements made by or attributed to the defendant, together with circumstances surrounding them; and the defendant was known to possess or have access to weapons.

¶ 16                                B. Motions for Relief and Denial

¶ 17    On August 25, 2025, the defendant filed a "Motion to Reconsider Detention." The motion stated that it was filed pursuant to Illinois Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024). The motion stated that there had been "changes in circumstances" such that the defendant's detention should be reconsidered, specifically that the report contained an OP for the incorrect individual, the defendant did not have a felony conviction and instead had a misdemeanor conviction, and that Heather told medical providers that the alleged sexual assault was consensual. The defendant requested pretrial release with conditions.

¶ 18    The matter proceeded to a hearing on October 1, 2025. Defense counsel stated that at the initial detention hearing, the trial court relied upon inaccurate information in detaining the defendant. Defense counsel stated that the report contained an OP for the incorrect person and that he did not have a felony conviction. Defense counsel also stated that the trial court should consider that Heather told medical providers that she did "not consider this sexual assault" when determining detention. Defense counsel did acknowledge that the sexual assault charges were not the only detainable offenses. Defense counsel proffered that the defendant was 41 years old, lived in the community his entire life, had only one misdemeanor 21 years ago, and was not a flight risk. The parties shared two children and had been married since 2016 with a divorce pending. The

5

defendant had not made much contact with his children during detention. The defendant had the same residence and employment for 13 years.

¶ 19    Defense counsel argued that the defendant could be released on conditions that would mitigate any real and present threat, such as a no contact order and electronic home monitoring. The defendant did not have any issues during his six-month detention, and counsel stated that it was difficult to meet with the defendant during detention due to the noise levels of the jail.

¶ 20    The State said that while the report might have included an incorrect OP, it did accurately reflect two OPs filed by Heather against the defendant in 2022 and 2024. Additionally, the State argued that the felony charge reduced to a misdemeanor would not be an "outcome-determinative" fact for detention. The State then proffered the same factual basis for the charge provided during the initial detention hearing. As to the statements from the victim that she did not consider the incident to be sexual assault, Heather did state that the defendant physically harmed her and had access to a firearm then "forced [her] to engage in sexual intercourse with him." The State said, "I think that the Court is well aware that the issue at a jury trial, much less a detention hearing, isn't a particular victim's legal recitation of the definitions of force or sexual assault when she's in the throes of the circumstances talking to a nurse at the hospital." The State also noted that defense counsel's difficulty with access to the defendant was not a consideration of pretrial detention. The State requested that the defendant remain detained.

¶ 21    Defense counsel addressed the two OPs filed by Heather, stating that she asked the court to dismiss both of them, and as such, they should not be used "as some sort of evidence" that the defendant should continue to be detained. Defense counsel asked for the defendant to be released with conditions.

¶ 22    The trial court first stated that the defendant's motion was brought pursuant to Illinois

6

Supreme Court Rule 604(h)(2) (eff. Apr. 15, 2024), but the motion was "mislabeled" as a motion to reconsider. However, the trial court treated the proceeding as a motion for relief under Rule 604(h)(2). The trial court stated that it considered, in its initial ruling, that the report contained an incorrect OP and that the defendant previously pled guilty to a misdemeanor and not a felony. As to Heather's statements about the incident to medical providers, the court said that defense counsel was "looking to try the issue before the [c]ourt."

¶ 23   The trial court addressed the three elements necessary for pretrial detention. The trial court again found that the State met its burden of proof for all three elements—*i.e.*, that the proof was evident or presumption great that the defendant committed the offenses, that he posed a real and present threat to the safety of any person or the community, and that no condition or combination of conditions would mitigate that threat. The trial court said, "I don't find anything compelling in the defense argument at this point to change that outcome." The trial court denied the defendant's motion for relief.

¶ 24   On December 31, 2026, the defendant filed an "Amended Motion for Relief from Pretrial Detention Pursuant to Ill. S. Ct. R. 604(h)(2)." The defendant alleged that,

> "[The] Court misapplied the law to the proffers presented by the State at the April 2, 2025 and October 1, 2025 hearings. The facts proffered by the State at both hearings were insufficient to satisfy the clear and convincing evidence standard because they did not establish that [the defendant] caused the head wound to [Heather], battered her as described, or sexually assaulted her in two different ways."

The motion alleged that the State failed to meet its burden of proving that the defendant committed the offenses, that he posed a real and present threat to Heather, and that no condition or combination or conditions could mitigate the threat.

7

¶ 25   The defendant argued that the State failed to prove that the defendant committed the offenses because, "There are no witnesses, no DNA evidence, and no video footage for the allegations at issue in this case. It is purely [Heather's] statements which are underpinning the allegations." The defendant further argued that the proffer fell "short of establishing any connection" between Heather's injuries and the defendant causing the injuries. Additionally, the defendant had a medical procedure the day of the offenses, requiring anesthesia and stitches, and he was not physically capable of committing the offenses.

¶ 26   As to the defendant's dangerousness, the motion stated that while the defendant's history involved a domestic battery conviction, a driving under the influence conviction, and a theft conviction, his history was not "indicative of violent conduct when his scant criminal history speaks for itself." The defendant argued that the previous domestic battery conviction did not involve Heather and did not constitute a violent history.

¶ 27   The defendant argued that the court "did not adequately analyze what conditions of pretrial release might have mitigated the dangerousness alleged by the State and, instead, made a conclusory finding that no such conditions could exist." Specifically, home confinement, GPS monitoring, and/or more frequent check-ins would have been sufficient to mitigate any threat. The defendant asserted that the State did not present any evidence as to conditions, and that it improperly relied upon the proffered facts and the defendant's history only.

¶ 28   The defendant also argued that there were "additional considerations to take into account which impact the Court's analysis of crucial factors and further support [the defendant's] release from pretrial detention." These factors included situs of incident (Heather voluntarily picked the defendant up from his surgical procedure and drove him home), no DNA evidence, no blood stains found or observed on the defendant, character letters offered in support of the defendant, and that

8

the defendant was self-employed. The defendant asked to be released.

¶ 29    The matter proceeded to hearing on January 7, 2026. At the beginning of the hearing, the State requested to present a victim statement from Heather to the court under the Crime Victim Rights Act.[1] Defense counsel objected to the statement, arguing that the State was not permitted to present additional evidence at a motion for relief hearing, citing *People v. Williams*, 2024 IL App (1st) 241013. The State argued that it was not additional evidence but instead a victim statement about the proffered information from the initial hearing. The trial court addressed the parties, asking defense counsel why the defendant was permitted to submit new evidence to the trial court, but the State was not. After hearing argument from the parties, the trial court allowed the State to present the letter and overruled defense counsel's objection.

¶ 30    Defense counsel argued that the State failed to prove that the defendant committed the offenses alleged because there was "an insufficient casual connection linking [the defendant] to these offenses." Specifically, the only evidence was the "verbal testimony" of Heather. Defense counsel asserted that no physical evidence was presented by the State and the trial court was incorrect to say that there was "much more in terms of the development of a factual situation" of the case.

¶ 31    As to the defendant's dangerousness, defense counsel asserted that the following factors did not apply: whether the defendant had a criminal history indicative of violent conduct, had access to weapons, or was on parole at the time of the offense. Defense counsel argued that the "two orders of protection were misrepresented by the State" because the actions were dismissed and the trial court should not use them as a history of violence between the defendant and Heather. Defense counsel again stated that the only connection between Heather's injuries and the

---

[1]Rights of Crime Victims and Witnesses Act, 725 ILCS 120/1 *et seq.* (West 2024).

defendant's involvement was her testimony.

¶ 32    Defense counsel argued that the trial court "did not properly analyze what conditions of pretrial release might have mitigated the dangerousness alleged by the State." Defense counsel stated that *People v. Stock*, 2023 IL App (1st) 231753, supports the defendant's argument that the State only relied upon its factual proffer to establish that no conditions would be sufficient, and that was improper.

¶ 33    Finally, defense counsel argued that "new developments" weigh in favor of the defendant's release, such as the reasons stated in the motion for relief. Regarding the situs of the incident, Heather voluntarily agreed to pick up the defendant from a medical procedure. As to DNA evidence, defense counsel stated, "There's been no DNA evidence disclosed to the defense in any way implicating [the defendant] of the crimes alleged in the information. No rape kit was ever requested by the victim, which is odd, given the medical background as a nurse and hospital administrator." Defense counsel also said that there were no blood stains found or observed, which was "a glaring omission that undercuts the credibility of the victim's claims." Additionally, the defendant obtained 13 character letters. Defense counsel asked for the defendant's release.

¶ 34    The State argued that the motion for relief "assert[ed] nothing new" and was the defendant "seeking a second bite at the apple." The State said, "There [was] absolutely a connection [between the injuries and the defendant]. That's what the victim told police happened. Police observed evidence consistent with her statements. That was documented. That was reported. This case was charged." Further, the State argued that the statute did not require there to be other witnesses. The State asserted that the trial court received evidence about the parties' relationship, a history of violence from the defendant through the OPs, that the defendant had access to firearms, and the defendant's prior domestic battery conviction. The State said that even if the defendant lived away

10

from Heather, he still posed a danger to her, given his history and their prior relationship, and no conditions would adequately protect her. The State presented Heather's victim statement to the trial court for review, which the trial court allowed over the defense's objection and considered it.

¶ 35    The trial court stated that it had "considered the proffer and the assertion of fact from each party along the way" and "adequately applied the prongs to the evidence and found that the State [had] met its burden in each of those required prongs." The trial court said that the case was not at a trial point yet, and arguments regarding the underlying prosecution would be appropriate for a plea of not guilty. The trial court found that "the facts as offered considered against the backdrop of the law justify [the defendant's] continuing incarceration on a pretrial basis." The trial court denied the motion for relief.

¶ 36                                   II. ANALYSIS

¶ 37    The defendant appealed on January 26, 2026. The defendant's trial counsel filed an entry of appearance on appeal. The defendant was permitted, but not required, to file a memorandum on appeal. Defense counsel never filed a memorandum or a notice in lieu pursuant to Rule 604(h)(7). "Issues raised in the motion for relief are before the appellate court regardless of whether the optional memorandum is filed." Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Therefore, our review is limited to the issues raised by the defendant in his motion for relief.

¶ 38                           A. Issues Presented on Appeal

¶ 39    In this case, the defendant filed multiple motions pertaining to pretrial detention. On August 25, 2025, the defendant filed a "Motion to Reconsider Detention," which the trial court construed to be a motion for relief pursuant to Rule 604(h)(2) due to the language within the motion. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024). A motion for relief is a prerequisite to an appeal under Rule 604(h)(2), and the trial court addressed the incorrect title of the motion when

11

construing it to be a motion for relief. This motion was denied on October 1, 2025. On November 14, 2025, the defendant filed a "Motion for Reconsideration of Pretrial Detention," which did not mention Rule 604(h)(2). On December 31, 2025, the defendant filed a document titled "Defendant's Amended Motion for Relief from Pretrial Detention Pursuant to Ill. S. Ct. R. 604(h)(2)." The trial court considered this motion to be an amended version of the November "Motion for Reconsideration of Pretrial Detention," despite the differing title names and contents.

¶ 40　　While the defendant is not required to file a memorandum, the memorandum is utilized to identify which issues from the motion for relief are being advanced on appeal. Ill. S. Ct. R. 604(h)(7) (eff. Apr. 15, 2024). Despite multiple filed motions related to the defendant's pretrial detention, the defendant did not provide a memorandum to advance any arguments or even clearly identify which motion for relief he would like to rely upon on appeal. In the defendant's notice of appeal, he includes all the hearing dates regarding pretrial release. In the "Date of Order on Motion for Relief" section, however, it states that the defendant is appealing from the January 7, 2026, denial of his motion for relief. As such, we will use the December 31, 2025, "Defendant's Amended Motion for Relief from Pretrial Detention Pursuant to Ill. S. Ct. R. 604(h)(2)" as the basis for the issues raised before this court.

¶ 41　　In the defendant's December 31, 2025, amended motion for relief, he alleged that the State failed to meet its burden of proof that (1) the defendant committed a detainable offense, (2) the defendant posed a real and present threat to any person or persons or the community, and (3) that no condition or combination of conditions could mitigate the defendant's threat. The defendant also included "additional considerations," which were additional facts about the offense and information available from supplemental discovery disclosures by the State.

¶ 42　　At the January 7, 2026, hearing, defense counsel argued that the State could not present

12

new evidence, but he also asked the court to consider new evidence for the defendant. Defense counsel quoted *Williams*, 2024 IL App (1st) 241013, to argue that the State was not permitted to submit any new evidence to the trial court. See *Williams*, 2024 IL App (1st) 241013, ¶¶ 25-29. Defense counsel, however, also presented new evidence based on discovery disclosures and included it in the motion for relief that is on review before this court. We need not address any issues regarding additional evidence presented by either party at the trial court level, as our finding remains the same with or without such evidence. Accordingly, we will only consider the facts presented at the initial detention hearing and furthered at the subsequent hearings.

¶ 43                                B. Standard of Review

¶ 44    Our standard of review of pretrial release determinations is dependent on whether the trial court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. Where the parties to a pretrial detention hearing proceed solely by proffer or submission of documentary evidence, this court stands in the same position as the circuit court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54. Because the parties proceeded solely by proffer, our review is *de novo*.

¶ 45                          C. Commission of Qualifying Offense

¶ 46    Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the Pretrial Fairness Act. Under article 110 of the Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2024). If the State files a petition requesting denial of pretrial release,

13

"[T]he State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of [another] person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 7. See 725 ILCS 5/110-6.1(e), (f) (West 2024).

Our supreme court has instructed that "[e]vidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74; *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12.

¶ 47    The defendant argued in his motion for relief that the State failed to prove by clear and convincing evidence that the proof was evident or presumption great that he committed a detainable offense. The defendant asserts that "It is purely [Heather's] statements which are underpinning the allegations" of sexual assault, aggravated battery, and unlawful restraint. As to sexual assault, the defendant points to the lack of DNA evidence or a completed rape kit. Further, there was no "ring doorbell footage from any neighbors capturing [Heather] being dragged from the vehicle to the house."

¶ 48    At this stage, the State does not need to prove the defendant's guilt beyond a reasonable doubt. *Stock*, 2023 IL App (1st) 231753, ¶ 13. Instead, the State needs only to show that the proof is evident or the presumption great that the defendant has committed a qualifying offense "by clear and convincing evidence." 725 ILCS 5/110-6.1(e)(1) (West 2024). The defendant continually argues that there is insufficient evidence to prove he committed the offenses because of the lack

14

of physical evidence or video recordings. Such evidence would not be required, even under the standard of proof beyond a reasonable doubt. See *People v. Williams*, 182 Ill. 2d 171, 192 (1998) ("Proof of physical evidence connecting a defendant to a crime has never been required to establish guilt."). The Act provides that the State need not actually introduce the underlying evidence at the hearing, and may satisfy its burden of persuasion by presenting evidence "at the hearing by way of proffer based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2024).

¶ 49    At the initial pretrial detention hearing, the State proceeded by proffer to present evidence "based upon reliable information." 725 ILCS 5/110-6.1(f)(2) (West 2024). In this case, the proffered information was based upon Heather's account of the events to law enforcement, as well as presenting exhibits of Heather's medical records, the previous OPs, an emergency restriction of parenting time for the defendant based on the offenses in this case, and photos of Heather's injuries including a head injury, bruises, and abrasions to her body. The trial court considered all the exhibits when considering whether the defendant committed a detainable offense. All the evidence presented can reasonably be viewed as reliable. *People v. Horne*, 2023 IL App (2d) 230382, ¶ 24.

¶ 50    We have thoroughly reviewed the record on appeal in this matter, including the initial detention hearing and the hearing on the defendant's motion for relief. The defendant was charged and indicted with two counts of criminal sexual assault,[2] aggravated domestic battery, two counts of aggravated battery, two counts of domestic battery, and unlawful restraint. Of the eight total counts, seven of the offenses are detainable under the statute. See 725 ILCS 5/110-6.1(a)(1.5), (4), (6) (West 2024).

¶ 51    The defendant repeatedly argues that the only evidence the trial court considered as to the

_____

[2]In count VIII (criminal sexual assault), the defendant was indicted by a grand jury after the initial detention hearing. He was, however, charged with count I (criminal sexual assault) prior to the detention hearing, and as such we consider count I as to the initial detention hearing.

15

commission of a detainable offense were Heather's statements, but this is belied by the record. In addition to her statements to law enforcement, Heather also told medical providers of the offense and presented with consistent injuries, as well as included the information in a filing in the parties' divorce case. Included in the State's exhibits was the defendant's response to Heather's request for emergency relief in the divorce case. Relevant to this appeal, the defendant stated that he "acknowledges that there was a physical confrontation between the parties" but asserts that the "confrontation was caused in part by [Heather's] conduct." The defendant also acknowledged that Heather "was injured during their confrontation" and they engaged in sexual intercourse, but Heather initiated it. Defense counsel stated at the initial detention hearing, "[T]here was an incident. We acknowledged in our response to the petition there was an incident, Judge, and it wasn't a one-way street." This court reviewed the photographs of Heather's injuries after the offense, including the staples in her scalp, bruising, and wounds along her body and head.

¶ 52    The record, as summarized above, shows the reliable information provided by the State to prove, by clear and convincing evidence, that the defendant committed detainable offenses. The exhibits, facts, and proffer presented sufficiently meet the burden of proof. As such, we find that the proof is evident or presumption great that the defendant committed a detainable offense.

¶ 53                                    D. Real and Present Threat

¶ 54    The defendant argues that the State failed to prove by clear and convincing evidence that the defendant posed a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case. The defendant asserts that the following factors do not apply to him: (1) criminal history that is "indicative of violent" conduct, (2) access to weapons, or (3) on parole at the time of the alleged offense. 725 ILCS 5/110-6.1(g)(2)(A), (7), (8) (West 2024).

16

¶ 55   The court is provided a nonexhaustive list of factors it should consider when determining whether a defendant poses a real and present threat to the safety of any individual(s) or the community. These include the following:

"(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive, or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release, or other release

17

from custody pending trial, sentencing, appeal, or completion of sentence for an offense under federal or State law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g)(1)-(9) (West 2024).

No one factor is determinative, and the court must base its decision on an individualized assessment. *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 15 (citing 725 ILCS 5/110-6.1(f)(7) (West 2022)).

¶ 56    We have conducted our own independent review of the proffered evidence and the relevant factors. First, the nature and circumstances of the offenses charged against the defendant involve a crime of violence, the use of a weapon, and a sex offense. 725 ILCS 5/110-6.1(g)(1) (West 2024). Next, the history and characteristics of the defendant include a domestic battery conviction from 2004, two OPs filed by Heather against the defendant in 2022 and 2024, a DUI conviction, and theft conviction. 725 ILCS 5/110-6.1(g)(2) (West 2024). While the OPs were ultimately dismissed by Heather, the defendant's behavior detailed in the OP filings shows a history of violent and abusive behavior from the defendant against Heather for at least four years prior to the present offense. The defendant's domestic battery conviction was 20 years old, but it is a part of his history and can be considered.

¶ 57    Further, the defendant poses a threat specifically to Heather. 725 ILCS 5/110-6.1(g)(3) (West 2024). During the initial detention hearing, the State said that "[Heather] has advised that she is continuing to suffer effects of the concussion. She is terrified of [the defendant], she does not want to be here and cannot bear to look at him. She has elected not to appear today." The

18

defendant poses a threat to Heather's safety, to her physical and mental wellbeing, as she was afraid to even attend a hearing when the defendant was under arrest. The defendant was alleged to have used a firearm during the offense by using it to threaten to harm and kill Heather, as well as himself, and caused an injury to Heather's head by hitting her with the firearm. 725 ILCS 5/110-6.1(g)(7) (West 2024). The firearm was not recovered during a search of the home, but the defendant is believed to have access to a firearm, despite not possessing a FOID card. Accordingly, this court agrees with the trial court, that based on the specific articulable facts and the Code's factors, the defendant posed a real and present threat to Heather.

¶ 58                                         E. Conditions

¶ 59      Once a court determines that the defendant poses a threat to the safety of any individual or the community, the trial court must determine whether the State has met its burden of proving by clear and convincing evidence what pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2024). In reaching its determination, the trial court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the person;[3] (4) the nature and seriousness of the specific, real, and present threat to any person that would be posed by the person's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice

---

[3]The defendant's history and characteristics include: "the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past relating to drug or alcohol abuse, conduct, *** criminal history, and record concerning appearance at court proceedings," as well as "whether, at the time of the current offense or arrest, the defendant was on probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal law, or the law of this or any other state." 725 ILCS 5/110-5(a)(3)(A), (B) (West 2024).

19

process. 725 ILCS 5/110-5(a) (West 2024). The Code lists no singular factor as dispositive. See 725 ILCS 5/110-5(a) (West 2024). The nature and circumstances of the underlying offense is "just one factor to consider in determining whether the threat posed can be mitigated by conditions of release." *People v. Lopez*, 2025 IL App (2d) 240709, ¶ 19.

¶ 60    As we are employing *de novo* review, we will apply these same factors to the evidence proffered. We find the following factors support the conclusion that no condition or combination of conditions could mitigate the real and present threat posed by the defendant. First, the nature and circumstances of the offenses charged. The defendant was charged with eight counts in total, seven of them being detainable. The offenses involve violence, the use of a weapon, and sexual assault. 725 ILCS 5/110-5(a)(1) (West 2024). Next, the weight of the evidence against the defendant included a factual account from Heather, medical records which again reported the offense from Heather, and photos of Heather's injuries consistent with the offenses charged and as described by the State's proffer. 725 ILCS 5/110-5(a)(2) (West 2024). Further, the defendant's history includes domestic battery of another victim, a DUI conviction, and a theft conviction. 725 ILCS 5/110-5(a)(3) (West 2024). Excluding the incorrect OP on the report, Heather still filed two OPs against the defendant for violent behavior in 2022 and 2024. He was not on probation, parole, or any other form of release at the time of the offense. Additionally, the defendant presents a serious threat to Heather if released. 725 ILCS 5/110-5(a)(4) (West 2024). The defendant threatened to kill Heather and caused a severe injury to her head, requiring stitches. Heather told the State that she would not feel safe if the defendant was released. Accordingly, based on our independent review, we agree with the trial court that no condition or combination of conditions would mitigate the threat posed by the defendant.

¶ 61                     III. CONCLUSION

¶ 62    Based on the foregoing reasons, we affirm the trial court's orders of April 2, 2025, October 1, 2025, and January 7, 2026.


¶ 63    Affirmed.